# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND
## *Southern Division*

|  |  |  |
|---|---|---|
| **DONTE BROWN, #1956844** | * | |
| **Plaintiff** | * | |
| | * | |
| v. | * | **CIVIL NO. GJH-17-3231** |
| | * | |
| **WARDEN,** *et al.* | * | |
| **Defendant**. | * | |
| | ********* | |

## **MEMORANDUM OPINION**

Plaintiff Donte Brown, an inmate incarcerated at Roxbury Correctional Institution, brings this civil rights action pursuant to 42 U.S.C. § 1983, seeking monetary damages and other miscellaneous relief from Warden, Baltimore City Booking and Intake Center ("BCBIC"), and Defendant Correctional Sergeant Wayne Murray ("CS Murray"). ECF Nos. 1, 3, & 24. Presently pending before the Court is Defendant's Motion to Dismiss, or in the Alternative, for Summary Judgment, ECF No. 19, Plaintiff's Motion for Discovery, ECF No. 30, and Plaintiff's Motion for Extension of Time, ECF No. 31. Although Plaintiff's counsel sought and was granted an opportunity to respond to Defendant's Motion to Dismiss by November 15, 2018, he has neither opposed the motion nor sought additional time in which to do so. ECF Nos. 39 & 40. No hearing is necessary. *See* Local Rule 105.6. For the reasons that follow, Defendant's unopposed Motion, ECF No. 19, construed as a Motion for Summary Judgment, is granted-in-part and denied-in-part, and Plaintiff's Motions are denied as moot.

**I.      BACKGROUND**[1]

Brown alleges that on August 10, 2017, CS Murray was called to Brown's holding cell when Brown requested medical attention due to pneumonia-like symptoms. ECF Nos. 21 & 24 ¶ 8. Brown claims that, after his repeated requests for medical attention, CS Murray ordered a female officer "to call a code." ECF No. 24 ¶ 8. Brown alleges that he saw "numerous officers coming," dropped his charging papers to prepare for "what they where [sic] going to do," and heard CS Murray say, "Fuck his ass up." *Id.* ¶ 9. Brown alleges that CS Murray then sprayed mace in Brown's face for about thirty seconds. *Id.* CS Murray admits that he pepper sprayed Brown, but disputes Plaintiff's recollection of the incident, instead stating that he used the pepper spray on Brown when "Plaintiff made a threatening gesture to Sgt. Murray, as if he intended to throw a punch." ECF No. 19-1 at 3; ECF No. 19-2 ¶ 3.

Brown further alleges that, after "losing [his] sight," he "felt numerous punches to the face and head coming from everywhere." ECF No. 24 ¶ 10. Plaintiff claims that he "ran back in the

---

[1] On November 2, 2017, Plaintiff filed his original Complaint, which failed to state with particularity which rights he believed were violated, how Defendant allegedly violated those rights, and how Plaintiff experienced injury. ECF No. 1. On February 7, 2018, the Court granted Plaintiff the opportunity to supplement his Complaint with allegations to address these deficiencies. ECF No. 2. On February 27, 2018, Plaintiff supplemented his Complaint with a form Complaint, identifying Sergeant Wayne Murray as the Defendant. ECF No. 3. On August 9, 2019, three days after Defendant's Motion to Dismiss was filed, Plaintiff filed what appears to be an Amended Complaint. ECF No. 24. Plaintiff also sent additional correspondence and documents separately for this Court "to review before [making] a judgement in [his] case." ECF Nos. 21 & 26.

Federal Rule of Civil Procedure 15(a)(1)(B) allows a party to amend its pleading once as a matter of course "if the pleading is one to which a responsive pleading is required, 21 days after service of a responsive pleading or 21 days after service of a motion under Rule 12(b), (e), or (f), whichever is earlier." The Court is also mindful that Plaintiff was initially a *pro se* litigant. A federal court must liberally construe *pro se* pleadings to allow the development of potentially meritorious cases. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *Cruz v. Beto*, 405 U.S. 319 (1972). Therefore, the Court will derive the factual background from Plaintiff's Amended Complaint, ECF No. 24, and will consider ECF Nos. 21 and 26 as supplements to Plaintiff's Amended Complaint, including Plaintiff's attached documents. Finally, because the Court is construing Defendant's Motion as one for Summary Judgment, the Court will also consider the video evidence and CS Murray's sworn declaration, attached as exhibits to Defendant's Motion. *See Laughlin v. Metropolitan Wash. Airports Auth.*, 149 F.3d 253, 260-61 (4th Cir. 1998).

direction of the Hall [cameras]," in an effort to escape the alleged beating that occurred "out of sight of the [camera]." *Id.* He asserts that when officers ordered him to get on the ground, he complied, and then "was kick[e]d and stomp[ed] in the face knocking [his] teeth out by unknown officers." *Id.* ¶ 11. Brown states that he heard CS Murray order the officers to take him to the "medical middle bull pen where the [camera] can't see." *Id.* He alleges that the escorting officers continued to hit him in the face with "punches, foggers and keys." *Id.* Once in the "medical middle bull pen" and handcuffed "to the back," Brown alleges that three officers came in and punched him in the face, followed by three additional officers who beat his body and face in the corner of the bull pen. *Id.* ¶ 12.

Brown contends that BCBIC's head doctor told the staff that Brown needed to go to the emergency room, and that a lieutenant, captain, and major took photographs of his face and body. *Id.* ¶ 13. Brown was then escorted to the University of Maryland Medical Center ("UMMC") for x-ray and cat scans. *Id.* He was released later that night and sent back to BCBIC, allegedly sustaining "2 black eye[s], double vision in [his] left eye when [he] look[s] down or up, depressed right nasal bone fracture, missing tooth and a busted lip." *Id.* ¶ 14. The UMMC records submitted by Brown reflect a finding of "blunt trauma, right eye" and "atrophic holes, left eye," with the left eye condition possibly "related to previous trauma" based on his "past medical history of [c]losed blow-out fracture of left orbit." ECF No. 26-1 at 2-3.

Brown claims that he exhausted his administrative and legal remedies by submitting numerous Inmate Grievance Forms, to which he never got a response. ECF No. 24 ¶¶ 15, 16. It is undisputed that CS Murray issued Brown five notices of infraction following the incident. *Id.* ¶ 18; ECF No. 19-2, Murray Declaration, ¶ 4.

3

Defendant filed the instant Motion on August 6, 2018. ECF No. 19. Plaintiff filed his Amended Complaint three days later, on August 9, 2018. ECF No. 24. To avoid elevating form over substance, the Court will apply the arguments raised in Defendant's Motion to Plaintiff's Amended Complaint. In his Amended Complaint, Brown alleges excessive force by CS Murray and violations of his First and Eighth Amendment rights. ECF No. 24 ¶¶ 21, 22. He seeks declaratory and injunctive relief, compensatory damages in the amount of $2,000,000, and punitive damages in the amount of $2,000,000. *Id.* ¶¶ 24-31.

## II. STANDARD OF REVIEW

Defendant styles his motion as a Motion to Dismiss, or in the Alternative, for Summary Judgment. Defendant has filed a DVD, a declaration, and the Maryland Department of Public Safety and Correctional Services "Use of Force Procedures Manual." ECF Nos. 19, 19-2, 19-3, 19-4. If the Court considers matters outside the pleadings, as the Court does here, the Court must treat a motion to dismiss as one for summary judgment. Fed. R. Civ. P. 12(d). When the Court treats a motion to dismiss as a motion for summary judgment, "[a]ll parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." *Id.* When the moving party styles its motion as a "Motion to Dismiss, or in the Alternative, for Summary Judgment," as is the case here, and attaches additional materials to its motion, the non-moving party is, of course, aware that materials outside the pleadings are before the Court, and the Court can treat the motion as one for summary judgment. *See Laughlin v. Metropolitan Wash. Airports Auth.*, 149 F.3d 253, 260-61 (4th Cir. 1998). Further, the Court is not prohibited from granting a motion for summary judgment before the commencement of discovery. *See* Fed. R. Civ. P. 56(a) (stating that the court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact" without distinguishing pre- or post- discovery).

Summary judgment is appropriate if "materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations …, admissions, interrogatory answers, or other materials," Fed. R. Civ. P. 56(c), show that there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The party moving for summary judgment bears the burden of demonstrating that no genuine dispute exists as to material facts. *Pulliam Inv. Co. v. Cameo Props.*, 810 F.2d 1282, 1286 (4th Cir. 1987). If the moving party demonstrates that there is no evidence to support the nonmoving party's case, the burden shifts to the nonmoving party to identify specific facts showing that there is a genuine issue for trial. *See Celotex*, 477 U.S. at 322-23. A material fact is one that "might affect the outcome of the suit under the governing law." *Spriggs v. Diamond Auto Glass*, 242 F.3d 179, 183 (4th Cir. 2001) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). A dispute of material fact is only "genuine" if sufficient evidence favoring the nonmoving party exists for the trier of fact to return a verdict for that party. *Anderson*, 477 U.S. at 248. However, the nonmoving party "cannot create a genuine issue of material fact through mere speculation or the building of one inference upon another." *Beale v. Hardy*, 769 F.2d 213, 214 (4th Cir. 1986). When ruling on a motion for summary judgment, "[t]he evidence of the non-movant is to be believed; and all justiciable inferences are to be drawn in his favor." *Anderson*, 477 U.S. at 255.

The Court is mindful that Brown was initially a *pro se* litigant, and a federal court must liberally construe *pro se* pleadings to allow the development of potentially meritorious cases. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *Cruz v. Beto*, 405 U.S. 319 (1972). Liberal construction does not mean, however, that this Court can ignore a clear failure in the pleadings to allege facts sufficient to state a claim. *See Weller v. Department of Social Services*, 901 F.2d 387,

391 (4th Cir. 1990). A court cannot assume a genuine issue of material fact where none exists. Fed. R. Civ. P. 56(c). The Court also notes that Plaintiff eventually retained counsel, who was granted an opportunity to respond to Defendant's Motion, but did not do so. ECF Nos. 35, 39, 40.

## III. DISCUSSION

Brown alleges excessive force and denial of medical care under 42 U.S.C. § 1983, and violations of his First and Eighth Amendment rights. Title 42 U.S.C. § 1983 authorizes a plaintiff to bring a suit for damages against any individual whom "under color of any statute, ordinance, regulation, custom, or usage, of any State … subjects, or causes to be subjected, any citizen of the United States or other person … to the deprivation of any rights, privileges, or immunities secured by the Constitution."

### A. First Amendment Claim & Claims against Warden

It is not clear whether Defendant CS Murray is one and the same as Defendant "Warden" of the BCBIC. Brown alleges that "Defendant Warden of BCBIC is legally responsible for the operation of BCBIC and for the welfare of all inmates at BCBIC." ECF No. 24 ¶ 4. The only factual allegation against "Warden" states: "By Warden Defendant showing professional negligence towards Plaintiff Donte Brown in reference of physical violence for exercise of his right to seek redress from the prison through use of the prison grievance system. Warden Defendant is in violation of Plaintiff Donte Brown rights under the First Amendment to the United States Constitution." *Id.* ¶ 22.

"The First Amendment right to free speech includes not only the affirmative right to speak, but also the right to be free from retaliation by a public official for the exercise of that right." *Suarez Corp. Indus. v. McGraw*, 202 F.3d 676, 685 (4th Cir. 2000). To state a claim of retaliation for exercising First Amendment rights, a plaintiff must show that (1) the plaintiff engaged in

protected First Amendment activity; (2) the defendant took some action that adversely affected the First Amendment rights; and (3) there was a causal relationship between the protected activity and the defendant's conduct. *See Constantine v. Rectors & Visitors of George Mason Univ.*, 411 F.3d 474, 499 (4th Cir. 2005). An action adversely affects a plaintiff's First Amendment rights if it would "deter a person of ordinary firmness from the exercise of First Amendment rights." *Martin v. Duffy*, 858 F.3d 239, 249 (4th Cir. 2017) (quoting *Constantine*, 411 F.3d at 500). A causal connection between First Amendment activity and the alleged retaliatory action may be established by circumstantial evidence, such as evidence that the defendant was aware of the First Amendment activity and that the retaliation took place within some "temporal proximity" of that activity. *See Constantine*, 411 F.3d at 501.

While "the constitutional rights that prisoners possess are more limited in scope than the constitutional rights held by individuals in society at large," "incarceration does not divest prisoners of all constitutional protections." *Shaw v. Murphy*, 532 U.S. 223, 228 (2001). Accordingly, "a prison inmate retains those First Amendment rights that are not inconsistent with his status as a prisoner or with the legitimate penological objectives of the corrections system." *Pell v. Procunier*, 417 U.S. 817, 822 (1974). Specifically, the United States Court of Appeals for the Fourth Circuit has held that an inmate's "right to file a prison grievance free from retaliation" is protected by the First Amendment. *Booker v. S.C. Dep't of Corrs.*, 855 F.3d 533, 545 (4th Cir. 2017); *see also Santiago v. Blair*, 707 F.3d 984, 991-92 (8th Cir. 2013); *Hill v. Lappin*, 630 F.3d 468, 472 (6th Cir. 2010).

Brown's submission of his Inmate Grievance Forms was protected activity under the First Amendment. However, Brown has not shown that either Defendant CS Murray or Defendant "Warden" took an action adversely affecting his First Amendment rights that was caused by the

filing of his grievance forms. Brown's active case in this Court belies any plausible claim that he suffered "adversity" or that his First Amendment right of access to the courts was in any way chilled as a result. Moreover, Brown's conclusory statements as to how "Warden" or Murray violated his First Amendment rights, without any particularized facts, are plainly insufficient. Accordingly, the Court will dismiss Plaintiff's First Amendment claim, and will dismiss "Warden" as a party from this case.

### B. Eighth Amendment Claims

While Brown styles his claims as violations of the Eighth Amendment, the claims more appropriately arise under the Fourteenth Amendment. *See Natale v. Camden Cty. Correctional Facility*, 318 F.3d 575, 581 (3d Cir. 2003) ("While the Eighth Amendment prohibits the infliction of cruel and unusual punishment upon prisoners, it applies only 'after [the State] has secured a formal adjudication of guilt in accordance with due process of law.'") (quoting *City of Revere v. Massachusetts Gen. Hosp.*, 463 U.S. 239, 244 (1983)). However, the "Supreme Court has concluded that the Fourteenth Amendment affords pretrial detainees protections 'at least as great as the Eighth Amendment protections available to a convicted prisoner ….'" *Id.* Thus, the analysis is the same regardless of whether the claim falls under the Eighth or Fourteenth Amendments. *See Hill v. Nicodemus*, 979 F.2d 987, 990-92 (4th Cir. 1992) (affirming the application of the Eighth Amendment standard to a pretrial detainee's Fourteenth Amendment § 1983 claim). Accordingly, in keeping with the liberal construction of a *pro se* complaint, the Court will treat Brown's claim as arising under the Fourteenth Amendment, and will apply cases using the standard articulated under the Eighth Amendment. *See Oladokun v. Maryland*, Civil Action No. DKC-14-463, 2014 WL 7014511, at *1 n.7 (D. Md. Dec. 10, 2014) (treating *pro se* pretrial detainee plaintiff's § 1983

claim, which cited no particular constitutional basis, as arising under Fourteenth Amendment based on liberal construction of *pro se* pleadings) (citing *Hill*, 979 F.2d at 990-92).

### 1. Excessive Force

Brown alleges that CS Murray "used excessive force against [him] by masing [sic] and punching him in the face when Donte Brown was not violating any prison rules, and was not acting disruptively in any way." ECF No. 24 ¶ 21. Individuals who bring excessive force claims against law enforcement officers will typically fall into one of three categories: 1) arrestees, 2) pretrial detainees, or 3) convicted prisoners. Each of these categories of persons enjoys constitutional protection from excessive uses of force. *See Graham v. Connor*, 490 U.S. 386, 395 n.10 (1989) ("the Due Process Clause protects a pretrial detainee from the use of excessive force that amounts to punishment…. After conviction, the Eighth Amendment 'serves as the primary source of substantive protection … in cases … where the deliberate use of force is challenged as excessive and unjustified.'") (quoting *Whitley v. Albers*, 475 U.S. 312, 327 (1986)).

It is not contested that Brown was a pretrial detainee at the time of the incident alleged in the Complaint. ECF No. 24 ¶ 8 (noting that he was in "Holding Cell #19 at BCBIC"); ECF No. 19-1 at 6. Typically, where a plaintiff alleges excessive force stemming from incidents that occurred while he was a pretrial detainee, such claims are brought under the Fourteenth Amendment. *Riley v. Dorton*, 115. F.3d 1159, 1167 (4th Cir. 1997) ("we conclude that the excessive force claims of pretrial detainees are governed by the Due Process Clause of the Fourteenth Amendment"), *abrogated on other grounds by Wilkins v. Gaddy*, 559 U.S. 34 (2010). Conversely, the protection of the Fourth Amendment "does not extend to the alleged mistreatment of arrestees or pretrial detainees in custody." *Id.* at 1162; *see also Smith v. Murphy*, 634 Fed.

Appx. 914, 917 (4th Cir. 2015) (noting that cases involving "either prisoners or pretrial detainees" implicate the "Eighth or Fourteenth Amendment, rather than the Fourth Amendment").

The application of force involved in a detainee's confinement is evaluated under the Fourteenth Amendment's Due Process Clause. *See United States v. Cobb*, 905 F.2d 784, 788-89 (4th Cir. 1990). Under that standard, the use of force violates the Due Process Clause if it is intended as punishment. *See id.*; *Bibum v. Prince George's Cty.*, 85 F. Supp. 2d 557, 562 (D. Md. 2000). Punitive intent may be inferred when the application of force was not reasonably related to a legitimate non-punitive objective. *Cobb*, 905 F.2d at 789. Whether force used by prison officials was excessive is determined by inquiring if "force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson v. McMillian*, 503 U.S. 1, 6-7 (1992). A court must look at "the need for application of force"; "the relationship between that need and the amount of force used"; "the extent of the injury inflicted"; "the extent of the threat to the safety of staff and inmates as reasonably perceived by prison officials"; and "any efforts made to temper the severity of the response." *Whitley*, 475 U.S. at 321.

"[I]t is generally recognized that it is a violation of the [Constitution] for prison officials to use mace, tear gas or other chemical agents in quantities greater than necessary or for the sole purpose of infliction of pain." *Iko v. Shreve*, 535 F.3d 225, 240 (4th Cir. 2008) (quoting *Williams v. Benjamin*, 77 F.3d 756, 763 (4th Cir. 1996)) (emphasis and internal quotation marks omitted). However, the use of pepper spray is not "per se a cruel and unusual punishment," *McCargo v. Mister*, 462 F. Supp. 813, 818 (D. Md. 1978), and it may be used in order "to control recalcitrant inmates." *Williams*, 77 F.3d at 763 (quoting *Landman v. Peyton*, 370 F.2d 135, 138 & n.2 (4th Cir. 1966)). As with all excessive force claims, determining whether the amount of chemical agent used was appropriate focuses on whether a defendant acted with a sufficiently culpable state of

mind: "wantonness in the infliction of pain." *Iko*, 535 F.3d at 239-40 (citations omitted) (holding a correctional officer was not entitled to qualified immunity where an additional chemical agent was deployed into the inmate's cell after the inmate attempted to comply with officer's order, did not react violently, and the officer failed to remove inmate's clothes or secure medical care for inmate after chemical agent exposure).

An officer may be liable when he or she deploys more than a reasonable amount of a chemical agent. *See, e.g.*, *Furnace v. Sullivan*, 705 F.3d 1021, 1025 (9th Cir. 2013) (finding Eighth Amendment violation where officer discharged can of pepper spray until empty, and other officer also joined in). However, when an inmate ignores official commands repeatedly, multiple applications of pepper spray have been found to be reasonable. *See Williams*, 77 F.3d at 759, 763 (finding no Eighth Amendment violation where officer administered pepper spray after prisoner asked "Why?" in response to command); *Jackson v. Morgan*, 19 Fed. Appx. 97, 99, 102-03 (4th Cir. 2001) (upholding use of pepper spray twelve times when inmate refused to comply with commands to move from his cell and did not demonstrate "more than de minimis injury").

While CS Murray admits that he used pepper spray on Brown, he disputes Brown's account of the incident, arguing that he deployed reasonably objective force and that Brown's claims of excessive force are contradicted by the video evidence. ECF No. 19-1 at 6-15. In his declaration, CS Murray states that, when Brown refused to go back into his cell, several officers gathered in response to a code for assistance, and "Brown's body language became aggressive, he threw his charge papers on the floor, and he took a fighting stance." ECF No. 19-2 ¶ 3. CS Murray then "sprayed Mr. Brown with a single burst of pepper spray," which occurred out of range of the camera. *Id.* He states that Brown then ran in the direction of the Release Area, pursued by officers, and that CS Murray attempted to stop Brown by grabbing him around his waist, during which

11

Brown's paper jumpsuit was torn. *Id.* The officers eventually restrained Brown on the floor, handcuffed him, assisted him to his feet, and walked him to the medical section of the BCBIC. *Id.*

The Defendant's DVD of the incident,[2] recorded without sound from the perspective of several stationary hall cameras, verifies the majority of CS Murray's description of the incident. ECF No. 19-3.[3] However, there are several disputed instances that either occur off-camera (i.e. when Brown was pepper sprayed by CS Murray) or do not clearly depict what occurred after Brown was pepper sprayed and while the officers, including CS Murray, were attempting to restrain Brown. From approximately 6:17 a.m. until 6:21 a.m., the video shows CS Murray talking to Brown, with Brown's arms moving up and down. ECF No. 19-3, Camera BCBIC-ENC05-Court COMM 1. A group of officers can also be seen gathering behind CS Murray. *Id.* At approximately 6:21 a.m., it appears that pepper spray was administered, because officers can be seen reacting to the spray. *Id.*, Camera BCBIC-ENC05-2C MAIN CORR N. CS Murray and Brown are not visible at that point. *Id.* Shortly thereafter, Brown is seeing running away from the officers, who pursue him. *Id.*, Cameras BCBIC-ENC05-2N45 CORR, BCBIC-ENC05-POST 2N20 CORR. CS Murray is seen attempting to stop Brown by grabbing him around his waist unsuccessfully, tearing Brown's paper jumpsuit. *Id.* In the span of seconds, Brown is taken to the floor and handcuffed by at least five officers, including CS Murray. *Id.* During this altercation, several unidentified officers can be seen kicking or stomping Brown while he is on the ground, and CS Murray is indistinguishable from the group. *Id.* At approximately 6:22 a.m., a group of

---

[2] Brown viewed the DVD on August 9, 2018. ECF No. 27.

[3] The events occur in several different stationary cameras, which are referred to as follows: BCBOC-ENC05-2C MAIN CORR N; BCBIC-ENC04-2N45 CORR; BCBIC-ENC10-MEDICAL FRONT-1; BCBIC-ENC05-Court COMM 1; BCBIC-ENC05-POST 2N20 CORR.

officers escorts Brown to the medical section of BCBIC. Brown arrives at the medical section at approximately 6:23 a.m. *Id.*, Camera BCBIC-ENC10-MEDICAL FRONT-1.

In assessing the reasonableness for the use of force, the relationship between the need and the amount of force applied, the extent of the injury inflicted, the extent of the threat to the safety of staff and inmates as reasonably perceived by prison officials, and any efforts made to temper the severity of the response, the Court finds that factual disputes remain as to whether CS Murray used excessive force. Brown's medical records reflect blunt trauma to Brown's right eye. *See* ECF No. 26-1 at 3. Brown has also requested production of the photographs taken of him in BCBIC's medical section, but Defendant has not provided them. *See* ECF No. 30. While Brown is seen running away from the officers in the video, it is not clear whether CS Murray's subsequent participation in bringing Brown to the ground constituted excessive force, because CS Murray is indistinguishable from the other officers, all of whom appear to partake in continued use of force after Brown is taken down. Pre-discovery summary judgment in favor of Defendant is, therefore, inappropriate on the record now before the Court. Accordingly, Defendant's motion is denied as to Brown's excessive force claim.

### 2. Denial of Medical Care

Brown also alleges that CS Murray denied him medical care when he complained of pneumonia-like symptoms. ECF No. 24 ¶ 8; ECF No. 21. To state a constitutional claim for denial of medical care, a plaintiff must demonstrate that a defendant's actions or failure to act amounted to deliberate indifference to a serious medical need. *See Estelle v. Gamble*, 429 U.S. 97, 106 (1976); *Jackson v. Lightsey*, 775 F.3d 170, 178 (4th Cir. 2014). A "serious … medical need" is "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Iko v. Shreeve*,

535 F.2d 225, 251 (4th Cir. 2008) (quoting *Henderson v. Sheahan*, 196 F.3d 839, 846 (7th Cir. 1999)).

Deliberate indifference to a serious medical need requires proof that, objectively, the prisoner was suffering from a serious medical need and that, subjectively, the prison staff was aware of the need for medical attention but failed either to provide it or to ensure that the needed care was available. *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). In order to show a constitutional violation, "it is not enough that an official *should* have known of a risk; he or she must have had actual subjective knowledge of both the inmate's serious medical condition and the excessive risk posed by the official's action or inaction." *Jackson*, 775 F.3d at 178 (emphasis in original). If the requisite subjective knowledge is established, an official may avoid liability "if he responded reasonably to the risk, even if the harm was not ultimately averted." *Farmer*, 511 U.S. at 844. Reasonableness of the actions taken must be judged in the light of the risk the defendant actually knew at the time. *See Brown v. Harris*, 240 F.3d 383, 390 (4th Cir. 2000) (citing *Liebe v. Norton*, 157 F.3d 574, 577 (8th Cir. 1998) (focus must be on precautions actually taken in light of suicide risk, not those that could have been taken)).

Factual disputes also remain as to whether CS Murray displayed deliberate indifference to Brown's alleged pneumonia. CS Murray attests that another correctional officer asked him "to assist her with her detainee, Mr. Brown." ECF No. 19-2 ¶ 3. However, CS Murray does not deny that Brown was requesting medical assistance due to symptoms of pneumonia. *See* ECF Nos. 19-1, 19-2. While the video depicts Brown raising his arms while talking to CS Murray, there is not sound to give context to the situation. Importantly, the video does not reflect whether Brown was expressing frustration with CS Murray's denial of medical care, or whether he was disobeying the officers' orders to re-enter his cell. CS Murray states that he sprayed a "single burst" of pepper

14

spray in response to Brown's "fighting stance" and refusal to re-enter his cell, but Brown alleges that he was requesting medical assistance and that CS Murray refused to help, and then sprayed mace in Brown's face "for about 30 seconds." *Compare* ECF No. 19-2 ¶ 3, *with* ECF No. 24 ¶ 9. Although the Court notes that the medical records do not reflect a finding of pneumonia, the video does not clearly establish whether CS Murray's actions constituted a deliberate indifference to Brown's alleged medical need of pneumonia. *See* ECF No. 26-1. Accordingly, pre-discovery summary judgment is inappropriate on Plaintiff's claim for denial of medical care.

## IV. CONCLUSION

For the reasons discussed above, the Court partially grants Defendant's Motion to Dismiss, or in the Alternative, for Summary Judgment, but will deny it as to the claim that Defendant Correctional Sergeant Wayne Murray used excessive force and denied medical care in violation of the Fourteenth Amendment's Due Process Clause. The Court denies Plaintiff's Motion for Extension of Time and Plaintiff's Motion for Discovery as moot. Upon issuance of the accompanying Order, counsel for Plaintiff and Defendant will be contacted to schedule a Rule 16 Scheduling Conference. A separate order follows.

March 28, 2019                                         /s/_____
                                                       George J. Hazel
                                                       United States District Judge